## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES DELUNA, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>        v.<br><br>AMERICAN JOURNEY (PET), LLC, and CHEWY, INC.,<br><br>                    Defendants. | Civil Action No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff James Deluna ("Plaintiff"), acting on behalf of himself and all others similarly situated ("Class Members"), by and through his undersigned attorneys, brings this class action for damages and equitable relief against Defendants American Journey (PET), LLC, and Chewy, Inc. (collectively, "Defendants").

### NATURE OF THE CASE

1.      Dogs can—and often do—have allergic reactions to certain pet foods, including those that contain wheat and chicken. For this reason, concerned consumers, including Plaintiff and Class Members, avoid purchasing pet foods that include these problematic ingredients.

2.      For the health and well-being of their dogs, consumers willingly pay a premium for limited ingredient dog foods—like Defendants' American Journey Limited Ingredient Diet Venison and Sweet Potato Recipe; American Journey Limited Ingredient Diet Lamb and Sweet Potato Recipe; American Journey Limited Ingredient Diet Turkey and Sweet Potato Recipe; and American Journey Limited Ingredient Diet Duck and Sweet Potato Recipe purport to be (collectively, the "Limited Ingredient Diets").

3.      Consumers—including Plaintiff and Class Members—rely on Defendants' representations that the Limited Ingredient Diets include only limited ingredients, are specifically

formulated for the health needs of dogs, meet their own ingredient promises and warranties, and adhere to quality and manufacturing standards.

4.      Further, consumers, including Plaintiff and Class Members, rely on Defendants' representations that the Limited Ingredient Diets are "Grain Free."

5.      However, Plaintiff's internal investigation has revealed that the Limited Ingredient Diets are not "Grain Free" or truly "Limited Ingredient." Plaintiff's investigation found the Limited Ingredient Diets contain significant amounts of wheat and chicken, despite label representations indicating they do not. Specifically, Plaintiff's independent analysis found that the Limited Ingredient Diets contain material amounts of wheat and chicken, *i.e.,* amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

6.      Accordingly, Plaintiff brings this lawsuit seeking redress on behalf of himself and those similarly situated for Defendants' violation of the Magnusson-Moss Warranty Act, breach of warranties, unjust enrichment, and violations of Arizona's Consumer Fraud Act and Florida's Deceptive and Unfair Trade Practices Act.

## PARTIES

7.      Plaintiff James Deluna is a citizen of California residing in Farmersville, Tulare County, California.

8.      Defendant American Journey (PET), LLC is a corporation, organized and existing under the laws of the State of Florida. It directs the formulation, production, quality control, marketing, sale, and distribution of the Limited Ingredient Diets products in Florida and throughout the United States, including in California. Upon information and belief, the sole member of Defendant American Journey is Defendant, Chewy, Inc.

9.      Defendant Chewy, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business and national headquarters located at 1855 Griffin Road, Suite B-428, Dania Beach, Florida 33004. Defendant Chewy, Inc. distributes, markets, sells, and directs the marketing and selling of the Limited Ingredient Diets products in Florida and throughout the United States, including in Arizona.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 Members in the proposed Class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the Members of the proposed Class are citizens of states different from Defendants.

11.     Defendants have sufficient minimum contacts with Florida to be subject to this Court's personal jurisdiction. Defendants have chosen to locate their headquarters in Florida, intentionally avail themselves of the markets within Florida through the promotion, sale, marketing, and distribution of the Limited Ingredient Diets and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because both Defendants are headquartered within this District.

## FACTUAL ALLEGATIONS

13.     Plaintiff purchased the Limited Ingredient Diets on a bi-monthly basis from 2018 until 2019. Plaintiff purchased all of the Limited Ingredient Diets for his 3 dogs. Usually, Plaintiff purchased the 20 lb. or 30 lb. quantity.

14.     Plaintiff relied on Defendants' "no wheat" and single source animal protein representations on the product labels when deciding to purchase Limited Ingredient Diets for his dog.

15.     Plaintiff always purchased the Limited Ingredient Diets from a PetSmart located at 4240 S. Mooney Blvd., Visalia, California, 93277. Although the Limited Ingredient Diets products were more expensive than other choices he considered, Plaintiff chose to pay the premium price based upon the "limited ingredient" and other representations made by Defendants on their dog food packaging.

16.     At the time of each of his purchases, Plaintiff read and relied on Defendants' factual representations about the ingredients in the Limited Ingredient Diets dog food, including those

representations on the product label. The representations consistently and uniformly indicated that the Limited Ingredient Diets is grain-free and does not contain wheat, and that it contains a single source protein, lamb. In addition, Plaintiff purchased the Limited Ingredient Diets because his dogs had allergic reactions and believed the Limited Ingredient Diets would be a suitable product for his dog.

17.     Plaintiff did not receive the benefit of his bargain when he purchased the Limited Ingredient Diets, as they included ingredients that did not conform to the products' packaging representations and the warranties made by Defendants. Had he been aware of Defendants' misrepresentations, he either would have not purchased the Limited Ingredient Diets or would have paid less for them.

18.     If Defendants would conform the Limited Ingredient Diets to their packaging and ingredient warranties and representations, Plaintiff would be willing and likely to purchase the Limited Ingredient Diets products again in the future.

### Academic Research Regarding the Pet Food Industry

19.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of label claims with respect to the ingredients present in dog foods.

20.     In December 2014, a group of researchers determined that only 18% of the dog food samples they tested completely matched the label claims regarding the content of animal by-products. In other words, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 study hypothesized that raw materials used in the preparation of the canned dog food products contained multiple protein types and may have contributed to contamination.[1]

---

[1] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5): 1659-65 (completed December 31, 2014).

21.     In 2016, another study, conducted by Kayo Kanakubo, *et al*. ("Kanakubo Study"), looked into the issue of whether vegan pet food contained non-conforming mammalian ingredients.[2] Vegan pet foods should contain no mammalian proteins or ingredients. Yet, the Kanakubo Study found that half of the pet foods tested contained non-conforming mammalian DNA and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

22.     By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in the study conducted by Rebecca Ricci, *et al*. ("Ricci Study"), the ingredients of only 10 products correctly matched their labels.[3] Of the remaining 30 products, 5 did not contain the declared animal species as ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. According to the Ricci Study, mislabeling is an especially widespread problem in pet foods used for "elimination diets" (i.e., used to investigate food allergies). The Ricci Study researchers went on to suggest that manufacturers should pay particular attention to both, the selection of raw material suppliers and the production processes for pet food, due to the high risk of contamination.

23.     A second 2018 study (conducted in Europe) by Elena Pagani, *et al.* ("Pagani Study"), tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the products.[4] The Pagani Study also referenced the fact that other peer-reviewed studies have found that 80% of the dry foods analyzed contained non-

---

[2] *See* K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition, 2017 Feb; 101 (1): 70–74 (March 3, 2016).

[3] *See* Rebecca Ricci, *et al.*, *Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis,* BMC Veterinary Research Volume 14, Article number: 209 (2018).

[4] *See* Elena Pagani, *et al.*, *Cross-contamination in canine and feline dietetic limited-antigen wet diets*, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

conforming products. The Pagani Study researchers suggest that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control practices in the pet food industry, and opine that the pet food industry has a legal obligation to produce safe food for consumers. Further, the Pagani Study researchers hypothesize that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

24.    In 2018, a third study conducted by Thierry Olivry, *et al*. ("Olivry Study"), summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing. The Olivry Study researchers concluded that the mislabeling of pet food appears rather "common" in limited ingredient diet products that are proposed for elimination diets.[5] They also found that unexpected added ingredients are more frequently detected than those missing from the label.

25.    In sum, since 2014, virtually all scholarly researchers have determined that pet food, including dog food in particular, sold to consumers frequently contains non-conforming ingredients, and that significant discrepancies between the products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

## Defendants' Material Misrepresentations

26.    Dog foods vary in their quality of ingredients, formulas, manufacturing processes, and inspection quality. Dog owners who purchase "grain-free" and "limited ingredient" products pay a premium in order to alleviate their dogs' allergies or to provide various health benefits associated with a grain-free or limited ingredient diet. Notably, food allergies are more common among certain dog breeds than others.

---

[5] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22; 14(1):24 (January 22, 2018).

27.     In addition, dog owners are willing to pay a premium for dog food containing premium ingredients. Dog owners who do so expect the dog foods that are advertised as containing premium ingredients to conform to the ingredients listed on their packaging.

28.     Accordingly, Defendants' misrepresentations regarding the ingredients in the Limited Ingredient Diets are material to consumers who purchase these products instead of products that cost less, but do not claim to be made from select or premium ingredients.

29.     Inclusion of the phrases "Grain-Free" and "Limited Ingredient" in the product names for "the Limited Ingredient Diets" dog food line are intended to appeal specifically to owners of dogs that have exhibited allergic or other adverse reactions, which might be alleviated by a premium food, or for dog owners who wish to avoid such reactions. "Limited ingredient" and "Grain-Free" diets are often recommended by veterinarians to reduce risks of adverse reactions of dogs to certain ingredients that may be used as filler in lower-priced dog foods.

30.     Plaintiff and Class Members paid a price premium for dog foods that purportedly contained a single source animal protein and was grain-free. Unbeknownst to Plaintiff and Class Members, the Limited Ingredient Diets are neither.

31.     The front and back of Defendants' Limited Ingredient Diets dog food bags include numerous representations that are materially misleading. Images of the front of the bags are reproduced below:

**I.**    **American Journey Limited Ingredient Venison and Sweet Potato Recipe**







II.   **American Journey Limited Ingredient Lamb and Sweet Potato Recipe**







### III.   American Journey Limited Ingredient Turkey and Sweet Potato Recipe







IV.   **American Journey Limited Ingredient Duck and Sweet Potato Recipe**







32.     The representations that the Limited Ingredient Diets are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet" appear uniformly and prominently, on the front of every bag of the American Journey Limited Ingredient products, regardless of whether the represented "single animal protein" is venison, lamb, turkey, or duck.

33.     Further, the front of each bag of the Limited Ingredient Diets includes the words "GRAIN-FREE, LIMITED INGREDIENT" in large, bold type.

34.     There is no product labeling variation between each of the Limited Ingredient Diets products listed herein that is pertinent to the allegations in this lawsuit. Rather, the misrepresentations and omissions identified in this complaint are identical across all of the Limited Ingredient Diets products. In other words, the misrepresentations and means of deception are the same for all of the Limited Ingredient Diets products.

35.     Defendants' representations regarding the ingredients in the Limited Ingredient Diets are false, regardless of whether consumers choose to purchase these products to prevent health problems, or whether they purchase the Limited Ingredient Diets for dogs that are known to be sensitive or allergic wheat and/or chicken.

36.     In fact, Plaintiff's internal investigation revealed that the Limited Ingredient Diets contain significant amounts of wheat and chicken. Plaintiff's independent analysis of the ingredients of the Limited Ingredient Diets found that the products contain material amounts of chicken and wheat, *i.e.,* amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

37.     Specifically, Plaintiff's testing found amounts of the non-conforming ingredients within Limited Ingredient Diets that are well above amounts that would be considered cross contamination. The non-conforming ingredients found within the Limited Ingredient Diets are material to Plaintiff, customers, and potential Class Members.

38.     It is undisputed that the Q-PCR method of DNA testing is the industry standard method of testing used to determine whether food complies with FDA standards and other quality standards.

39.     Defendants' representations that the Limited Ingredient Diets are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet" "clinically proven to shorten colds" were developed with the intent to generate sales of the products and capture a substantial percentage of the dog food market.

40.     Defendants' uniform, express, and implied representations that the Limited Ingredient Diets are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet" pervades Defendants' labeling and marketing of the Limited Ingredient Diets products.

**Defendants' Misrepresentations and Omissions Are Material to Reasonable Consumers**

41.     Although dog foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that are wheat free, soy free, or chicken free because certain dog breeds have allergies associated with dog foods containing these ingredients, or because the owners understand that certain ingredients help—or hamper—their dogs' health, weight, and overall wellbeing.

42.     Nothing on the Limited Ingredient Diets packaging gives the reasonable consumer information suggesting that he or she is purchasing a product that contains chicken or wheat. In fact, the product packaging leads the reasonable consumer to believe the exact opposite.

43.     Chicken and wheat are key ingredients that reasonable consumers often avoid when purchasing dog food, which is exactly why Defendants disclaim their presence on the front of all of the Limited Ingredient Diets' packaging.

44.     Defendants' representations on the Limited Ingredient Diets packaging are designed to induce consumers to believe that the products are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet." These representations

are material to consumers and the primary factor motivating consumer purchases of the Limited Ingredient Diets products.

45.     It is reasonable for consumers to rely upon Defendants' representations concerning the Limited Ingredient Diets products when deciding to purchase the products. The primary reason that consumers purchase the Limited Ingredient Diets products is the desire to receive the advertised benefits of feeding their dogs a food that is "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet."

46.     When dog owners buy limited ingredient dog food, they do so to support their dogs' health, prevent a health issue, or to address a nutritional deficiency that their dogs may be experiencing. And consumers generally must pay a premium price for specialized dog food formulations, including the Limited Ingredient Diets. In fact, the Limited Ingredient Diets products each cost in excessive of $40 for a 24-pound bag of dry dog food.

47.     Accordingly, Plaintiff and Class Members purchased the Limited Ingredient Diets instead of cheaper dog food alternatives—some of which are also marketed by Defendants—that were known to contain wheat and/or chicken.

48.     Defendants' misrepresentations regarding the formulation of the Limited Ingredient Diets drive consumers' purchases.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

49.     Defendants had actual knowledge for years that its representations regarding the Limited Ingredient Diets products being "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet" are false misrepresentations.

50.     Although Defendants were aware that the above-described product claims are false and deceptive misrepresentations, they took no steps to disclose the truth to Plaintiff or Class Members.

51.     As the manufacturers of the Limited Ingredient Diets products, Defendants have known since the inception of the products that the above-described product claims are false and deceptive misrepresentations.

52.     Despite their knowledge, Defendants have fraudulently concealed the fact that the representations regarding the Limited Ingredient Diets products being "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," and "limited ingredient diet" are false misrepresentations.

53.     Defendants made affirmative misrepresentations to consumers during the sales of the Limited Ingredient Diets products.

54.     Defendants concealed material facts that would have been important to Plaintiff and Class and Subclass Members in deciding whether to purchase the Limited Ingredient Diets products. Defendants' concealment was knowing, and they intended to deceive Plaintiff and Class and Subclass Members to rely upon it. Accordingly, Plaintiff and Class and Subclass Members reasonably relied upon Defendants' concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

55.     The falsity of Defendants' misrepresentations was not reasonably detectible to Plaintiff and Class and Subclass Members.

56.     Defendants actively and intentionally concealed the falsity of their misrepresentations and failed to inform Plaintiff or Class and Subclass Members of their falsity at all times.  Accordingly, Plaintiff and Class and Subclass Members' lack of awareness was not attributable to a lack of diligence on their part.

57.     Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Limited Ingredient Diets products are not "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet."

58.     Defendants concealed the falsity of their misrepresentations for the purpose of delaying Plaintiff and Class and Subclass Members from filing a complaint on their causes of action.

59.     As a result of Defendants' active concealment of the truth and/or failure to inform Plaintiff and Class and Subclass Members of the falsity of their misrepresentations, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its active concealment of the falsity of their misrepresentations.

60.     Further, the causes of action alleged herein did not occur until Plaintiff and Class and Subclass Members discovered that the Limited Ingredient Diets products contain material amounts of wheat and chicken, *i.e.,* amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing. Plaintiff and Class and Subclass Members had no realistic ability to determine the falsity of Defendants' misrepresentations.  In either event, Plaintiff and Class and Subclass Members were hampered in their ability to discover their causes of action because of Defendants' active concealment of the falsity of their representations that the Limited Ingredient Diets products are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet."

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

61.     Although Defendants are in the best position to know what content they placed on their product packaging and labels, in advertising and marketing materials, and on their website(s) during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

62.     **WHO**:  Defendants made material misrepresentations and/or omissions of fact through their product packaging, advertising and marketing, website representations, and warranties, all of which misrepresent that the Limited Ingredient Diets products are "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet."

63.     **WHAT**:  Defendants' conduct here was, and continues to be, fraudulent because it omitted and concealed that the Limited Ingredient Diets products are not "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet."

64.      Further, Defendants' conduct deceived Plaintiff and Class and Subclass Members into believing that the Limited Ingredient Diets products are "Grain-Free and contain: no corn,

wheat, soy," "single animal protein source," or "limited ingredient diet." Defendants knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class and Subclass Members in making their purchasing decisions, yet they omit any disclosure of the fact that the Limited Ingredient Diets products actually contain material amounts of wheat and chicken, *i.e.,* amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

65.   **WHEN**:  The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiff and Class and Subclass Members surveyed the field of available dog foods in order to gather information that would aid them in selecting the best product for their dogs, prior to and at the time Plaintiff and Class and Subclass Members purchased the Limited Ingredient Diets products, and continuously throughout the applicable class period.

66.   **WHERE**:  Defendants' material misrepresentations and/or omissions were made on the product packaging, in advertising and marketing materials, and on their website(s).

67.   **HOW**: Defendants made misrepresentations and/or failed to disclose material facts regarding the fact that the Limited Ingredient Diets products are not "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet" in written form, electronic form, or conventional hardcopy form.

68.   **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class and Subclass Members, and all reasonable consumers to purchase and/or pay for the Limited Ingredient Diets products, the effect of which was that Defendants profited by selling the Limited Ingredient Diets products to many thousands of consumers.

69.   **INJURY**:  Plaintiff and Class and Subclass Members purchased or paid more for the Limited Ingredient Diets products when they otherwise would not have absent Defendants' misrepresentations and/or omissions.  Further, the Limited Ingredient Diets products continue to be sold via material misrepresentations and/or omissions on the product packaging, in advertising and marketing materials, and on Defendants' website(s), causing additional consumers to purchase

these products for more than they would be willing to pay if they knew that the Limited Ingredient Diets products are not "Grain-Free and contain: no corn, wheat, soy," "single animal protein source," or "limited ingredient diet."

## CLASS ACTION ALLEGATIONS

### Class Definitions

70.     Plaintiff brings this action on behalf of himself and the Members of the following Class:

> During the fullest period allowed by law, all persons residing in the United States who purchased the Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

71.     In addition, or alternatively, Plaintiff brings this class action on behalf of himself and the Members of the following Subclass ("California Subclass")

> During the fullest period allowed by law, all persons residing in the State of California who purchased the Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

72.     Specifically excluded from these definitions are: (1) Defendants, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

73.     Plaintiff reserves the right to amend the Class definition and/or Subclass definition as necessary.

74.     Plaintiff seeks only damages and equitable relief on behalf of himself and the Class Members and Subclass Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or the Class Members.

75.    **Numerosity**: The Members of the Class and Subclasses are so numerous that joinder of all Members is impracticable. While the exact number of Class and Subclass Members is presently unknown, it consists of thousands of people geographically disbursed throughout the United States and throughout Arizona. The number of Class and Subclass Members can be determined by sales information and other records through discovery. Moreover, joinder of all potential Class and Subclass Members is not practicable given their numbers and geographic diversity. The disposition of the claims of these Class Members and Subclass Members in a single action will provide substantial benefits to all parties and to the Court.

76.    **Typicality**: The claims of the representative plaintiff are typical in that Plaintiff, like all Class Members and Subclass Members, purchased the Limited Ingredient Diets that were manufactured, marketed, distributed and sold by Defendants. Plaintiff, like all Class Members, have been damaged by Defendants' misconduct in that, *inter alia*, he has incurred or will continue to incur damage due to purchasing a product at a premium price that contained ingredients that Defendants represented were absent from the Limited Ingredient Diets. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of deceptive, deliberate, and negligent misconduct resulting in injury to all Class Members.

77.    **Commonality**: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

a)    Whether the Limited Ingredient Diets contain wheat and/or chicken;

b)    Whether Defendants' representations that their products contain no wheat, are "Grain Free," "Limited Ingredient," and contain a "Single Source Protein" are false, deceptive, or misleading;

c)    Whether Defendants expressly warranted that the Limited Ingredient Diets would conform to the representations made on its packaging that the Limited Ingredient Diets contain no wheat or chicken;

d)     Whether Defendants impliedly warranted that the Limited Ingredient Diets would conform to the representations that they are limited ingredient products that would pass without objection in the trade under this description and are fit for the ordinary purposes for which such goods are sold;

e)     Whether Defendants breached their warranties by making the representations above;

f)     Whether Defendants were unjustly enriched by making the representations and omissions above;

g)     Whether Defendants' actions, as described above, violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

h)     Whether Defendants' actions, as described above, violated state consumer protection laws as alleged herein;

i)     Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

78.     **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class and Subclass Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

79.     **Predominance and Superiority**: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class or Subclass Members, and a class action is the superior method for the fair and efficient adjudication of this controversy.  Plaintiff and Class and Subclass Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class and Subclass Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective

remedy at law. Because of the relatively small size of Class and Subclass Members' individual claims, it is likely that few Class or Subclass Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class and Subclass Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

80.     Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclass as a whole.

**FIRST CAUSE OF ACTION**
**Violation of Magnuson-Moss Warranty Act**
**(15 U.S.C. §§ 2301, *et seq.*)**
**(On Behalf of the Nationwide Class)**

81.     Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein, as well as the allegations as to the breach of implied warranty of merchantability as set forth in the Third Cause of Action below.

82.     As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's Magnuson-Moss claim.

83.     The Limited Ingredient Diets are "consumer products" as defined in 15 U.S.C. § 2301(1).

84.     Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3) and utilized the Limited Ingredient Diets for personal and household use and not for resale or commercial purposes.

85.     Plaintiff purchased the Limited Ingredient Diets, which cost more than $5.00, and his individual claims are greater than $25.00 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

86.     Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. §§ 2301(4) and (5).

87.     The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

88.     The MMWA provides a cause of action for breach of warranty, including the implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

89.     Defendants have breached their implied warranties of merchantability by failing to provide merchantable goods. The Limited Ingredient Diets dog food at issue is not merchantable or fit for its ordinary purposes because it is purportedly designed and marketed as a wholesome limited ingredient food for owners who choose to avoid feeding their dogs wheat and/or chicken, yet the Limited Ingredient Diets products purchased by Plaintiff and Class Members do not function accordingly.

90.     Defendants breached their implied warranty of merchantability because the Limited Ingredient Diets did, in fact, contain wheat and chicken, at above trace amounts, and therefore fail to function as a limited ingredient diet.

91.     In their capacity as warrantor, and by the conduct described herein, any attempt by Defendants to limit the warranties is not permitted by law.

92.     By Defendants' conduct as described herein, Defendants have failed to comply with their obligations under their implied promises, warranties, and representations.

93.     Plaintiff and the Class fulfilled their obligations under the implied warranties.

94.     As a result of Defendants' breach of warranties, Plaintiff and the Class are entitled to revoke their acceptance of the Limited Ingredient Diets, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and, alternatively, California Subclass)

95.     Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

96.     Defendants uniformly marketed, sold, and/or distributed the Limited Ingredient Diets, and Plaintiff and Class Members purchased the Limited Ingredient Diets.

97.     Defendants uniformly represented in their marketing, advertising, and promotion of the Limited Ingredient Diets, including on the product packaging, that their products contained "no corn, wheat, soy," and "a single source protein," then specified the specific single source, *i.e.* venison, lamb, turkey, or duck.

98.     Defendants made these representations to induce Plaintiff and Class Members to purchase the Limited Ingredient Diets, which did, in fact, induce Plaintiff and other Class Members to purchase the products.

99.     Accordingly, Defendants' representations that the Limited Ingredient Diets contained no wheat and were made from a "single source protein" became part of the basis of the bargain between Defendants and Plaintiff and other Class Members.

100.     The Limited Ingredient Diets did not conform to Defendants' representations and warranties because, at all relevant times, the Limited Ingredient Diets contained wheat and chicken, which is an additional, undisclosed protein beyond the single source protein disclosed on the product packaging (i.e., venison, lamb, turkey, or duck).

101.     As a direct and proximate result of Defendants' breaches of their express warranties and their failure to conform to the Limited Ingredient Diets' express representations, Plaintiff and Class Members have been damaged.

102.     Plaintiff and Class Members have suffered damages in that they did not receive the products they specifically paid for and that Defendants warranted the Limited Ingredients Diets products to be. In addition, Plaintiff and Class Members paid a premium for products that did not conform to Defendants' warranties.

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On Behalf of the Nationwide Class and, alternatively, California Subclass)

103.     Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

104.     Defendants provided Plaintiff and Class Members with implied warranties that the Limited Ingredient Diets were merchantable and fit for the ordinary purposes for which they were sold, *i.e.,* that they were limited ingredient diet dog food products.

105.     Defendants marketed, sold, and/or distributed the Limited Ingredient Diets, and Plaintiff and other Class Members purchased the Limited Ingredient Diets.

106.     Plaintiff brings this claim for breach of the implied warranty of merchantability on behalf of himself and other consumers who purchased the Limited Ingredient Diets as a limited ingredient dog food product for their dogs.

107.     Defendants have breached the implied warranties of merchantability that they made to Plaintiff and the Class. For example, Defendants impliedly warranted that the Limited Ingredient Diets products were free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which limited ingredient dog foods are used.

108.     When sold by Defendants, the Limited Ingredient Diets were not merchantable, did not pass without objection in the trade as a limited ingredient diet for dogs, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the product packaging.

109.     As a result of Defendants' breaches of implied warranties, Plaintiff and Class Members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the Limited Ingredient Diets that contained non-conforming ingredients.

110.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of the Nationwide Class, and, alternatively, California Subclass)

111.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

112.    Plaintiff and Class Members conferred benefits on Defendants by purchasing the Limited Ingredient Diets at a premium price.

113.    Defendants have knowledge of their receipt of such benefits.

114.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Limited Ingredient Diets.

115.    Defendants' retention of these monies under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that Limited Ingredient Diets contained no wheat and were a single source protein (i.e., venison, lamb, turkey, or duck) when, in fact, the Limited Ingredient Diets did contain wheat and chicken.

116.    Defendants' misrepresentations have injured Plaintiff and Class Members because they would not have purchased (or paid a price premium) for the Limited Ingredient Diets had they known the true facts regarding the Limited Ingredient Diets' ingredients.

117.    Because it is unjust and inequitable for Defendants to retain such non-gratuitous benefits conferred on it by Plaintiff and Class Members, Defendants must pay restitution to Plaintiff and Class Members, as ordered by the Court.

## FIFTH CAUSE OF ACTION
### California Consumers Legal Remedies Act ("CLRA")
### (On Behalf of the California Subclass)

118.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

119.     The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

120.     Plaintiff and Subclass Members are "consumers" as defined in California Civil Code § 1761(d).

121.     The Limited Ingredient Diets Products are "goods" as defined in California Civil Code § 1761(a).

122.     Defendants are a "person" as defined in California Civil Code § 1761(c).

123.     Plaintiff and Subclass Members' purchases of the Limited Ingredient Diets are "transactions" as defined in California Civil Code § 1761(e).

124.     Defendants' representations and omissions concerning the quality, benefits and effectiveness of the Limited Ingredient were false and/or misleading as alleged herein.

125.     Defendants' false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

126.     Defendants' false and misleading representations and omissions were made to the entire Class and Subclass as they were prominently displayed on the packaging of every bag of the Limited Ingredient Diets dog food.

127.     Defendants knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and Subclass Members.

128.     Defendants' practices, acts, and course of conduct in marketing and selling the Limited Ingredient Diets were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

129.     Defendants' false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Limited Ingredient Diets for personal, family, or household purposes by Plaintiff and Subclass Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

130. Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised the Limited Ingredient Diets to unwary consumers.

131. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

132. Defendants' wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and Class Members.

133. Pursuant to the provisions of Cal. Civ. Code § 1782(a), on March 2, 2021, Plaintiff sent the required notice to Defendants regarding its unlawful conduct and violation of the CLRA. Plaintiff has not received a response yet. After 30 days, Plaintiff will seek to amend his complaint to add a claim for damages under the CLRA.

134. Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper on behalf of the Subclass.

**SIXTH CAUSE OF ACTION**
**California False Advertising Law ("FAL")**
**(On Behalf of the California Subclass)**

135. Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

136. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal

property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

137.    It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

138.    As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendants relating to the Limited Ingredient Diets were and are deceptive and misleading.

139.    As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant misled consumers acting reasonably as to Defendants' representations about quality, benefits, and ingredients of the Limited Ingredient Diets.

140.    Plaintiff and Subclass Members suffered an injury-in-fact as a result of Defendants' actions as set forth herein because, as a reasonable consumer, he purchased the Limited Ingredient Diets in reliance on Defendants' false and misleading labeling claims concerning the Limited Ingredient Diets' qualities, benefits, and ingredients.

141.    Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Limited Ingredient Diets in a manner that is untrue and misleading, which Defendant knew or reasonably should have known was untrue, and because Defendants omitted material information from its advertising.

142.    Defendants profited from sale of the falsely and deceptively advertised the Limited Ingredient Diets to reasonable but unwary consumers including Plaintiff and Subclass Members and Defendants have thereby been unjustly enriched.

143.    As a result, Plaintiff, Subclass Members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

144.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff on behalf of himself and Subclass Members, seek an order enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition Law ("UCL")**
**(On Behalf of the California Subclass)**

145.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

146.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

147.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and Subclass Members, as to the benefits and ingredients of the Limited Ingredient Diets Products.

148.    Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (b) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

149.    Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Limited Ingredient Diets was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to its victims, including Plaintiff and the California Subclass.

a.    Defendants' conduct with respect to the labeling, advertising, and sale of the Limited Ingredient Diets was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including

but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

b. Defendants' conduct with respect to the labeling, advertising, and sale of the Limited Ingredient Diets was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

c. Reasonable consumers, including Plaintiff on behalf of the California Subclass, purchased the Limited Ingredient Diets believing the products' ingredients were limited and did not include chicken and grain as represented by Defendants when in fact they were not—a fact of which consumers could not reasonably have become aware.

150.    <u>Fraudulent</u>: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

a. As set forth herein, Defendants' representations and omissions about the quality, benefits, and effectiveness of the Limited Ingredient Diets were and are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

151.    Defendants profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged the Limited Ingredient Diets to unwary consumers.

152.    Defendants' conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and Subclass Members. Plaintiff and Subclass Members have suffered injury-in-fact as a result of Defendants' unlawful conduct including but not limited to the damages as described above.

153.    Plaintiff and Subclass Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continues to disseminate misleading information on the Limited Ingredient Diets' packaging and through the marketing and advertising

of the Limited Ingredient Diets. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

154.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

155.    Plaintiff and Subclass Members also seek an order for and restitution of all monies from the sale of the Limited Ingredient Diets, which were unjustly acquired through acts of unlawful competition.

**EIGTH CAUSE OF ACTION**
**Violation of Florida's Unfair & Deceptive Trade Practices Act**
**(Fla. Stat. §§ 501.201, *et seq.*)**
**(On Behalf of the Nationwide Class)**

156.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-80 into this cause of action and claim for relief as if fully set forth herein.

157.    Plaintiff and Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

158.    Defendants are engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8). The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

159.    The Limited Ingredient Diets are goods within the meaning of FDUTPA.

160.    Defendants designed, manufactured, advertised, sold, marketed, distributed, and labeled the Limited Ingredient Diets from their headquarters in Florida.

161.    For the reasons discussed herein, Defendants violated and continue to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §§ 501.201, *et seq.*  Defendants' acts and practices, including their omissions, described herein, were likely to, and did, in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

162.     The offending conduct of the mislabeling of the Limited Ingredient Diets occurred within Florida. Specifically, given Defendants' headquarters are in Florida, the design, marketing, distribution, and other fraudulent contact occurred within Florida.

163.     Hence, all relevant communications made to out-of-state consumers regarding the Limited Ingredient Diets are due to Defendants' conduct, which occurred within Florida.

164.     Defendants' representations and omissions concerning the quality, benefits, and effectiveness of the Limited Ingredient Diets Products were false and/or misleading as alleged herein.

165.     Defendants' false, deceptive or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

166.     Defendants' false, deceptive, and misleading representations and omissions were made to the entire Class, as they were prominently displayed on the packaging of every bag of the Limited Ingredient Diets Products.

167.     Defendants knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

168.     Defendants' practices, acts, and course of conduct in marketing and selling the Limited Ingredient Diets Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

169.     Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Limited Ingredient Diets Products to unwitting consumers.

170.     Defendants' wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class Member.

171.     As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased the Limited Ingredient Diets products would

not have purchased them, or, alternatively, would have paid less for them had the truth about the non-conforming ingredients been disclosed.

172.    Plaintiff and the other Class Members did not receive the benefit of their bargain. Pursuant to Fla. Stat. §§ 501.2105(1)-(2), Plaintiff and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the FUDTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of a Class of all others similarly situated, seeks entry of an order or judgment against Defendants, as follows:

a.   Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class representative and Plaintiff's attorneys as Class Counsel;

b.   Declaring that Defendants' conduct violates the statutes referenced herein;

c.   Finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   Awarding compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.   Awarding pre-judgment interest on all amounts awarded;

f.   Awarding restitution and all other forms of equitable monetary relief;

g.   Awarding injunctive relief as pleaded or as the Court may deem proper; and

h.   Awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs incurred in bringing this lawsuit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 2, 2021

**GREG COLEMAN LAW PC**

/s/ *Rachel Soffin*
Rachel Soffin (FL Bar No. 0018054)
Jonathan B. Cohen (FL Bar No. 27620)
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**WHITFIELD BRYSON LLP**
Daniel K. Bryson*
J. Hunter Bryson*
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
dan@whitfieldbryson.com
hunter@whitfieldbryson.com

* *pro hac vice* application
forthcoming

*Attorneys for Plaintiff and
the Putative Class*